UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMIR ABDULMONEM SANKARI,

Plaintiff,

Case No.: 2:24-cv-12975
v.                                                     Hon. Gershwin A. Drain

U.S. DEPARTMENT OF STATE,
*et al.*,

Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO
DISMISS [ECF No. 9]**

**I.      INTRODUCTION**

Plaintiff Amir Abdulmonem Sankari ("Plaintiff"), a United States citizen, is
the relative visa petitioner for his parents, Abdulmonem Sankari ("Mr. Sankari") and
Sabah Sankari ("Mrs. Sankari"). Mr. and Mrs. Sankari are Turkish citizens who
reside in Turkey.

On October 31, 2023, a consular officer at the United States Embassy in
Ankara, Turkey conducted visa interviews for Mr. and Mrs. Sankari. That same day,
the consular officer refused Mr. and Mrs. Sankari's visa applications and requested
additional information from them. Mr. and Mrs. Sankari provided the requested

1

information shortly thereafter. Nevertheless, Mr. and Mrs. Sankari's applications remain denied, pending administrative processing.

Plaintiff claims that Defendants[1] have unlawfully withheld and unreasonably delayed a final adjudication of Mr. and Mrs. Sankari's visa applications, and he asks the Court to compel Defendants to complete administrative processing and render a final decision on their applications. Plaintiff also claims that Defendants' failure to adjudicate his parents' visa applications has violated his due process rights.

Defendants have filed a Motion to Dismiss, which is presently before the Court. The Court has reviewed the parties' briefing and concluded that a hearing will not aid in the disposition of the matter. Therefore, it will determine the outcome on the briefs. E.D. Mich. L.R. 7.1(f)(2). For the following reasons, Defendants' Motion to Dismiss [ECF No. 9] is **GRANTED.**

## II.    STATUTORY BACKGROUND

"A noncitizen seeking a visa based on a familial relationship with a U.S. citizen must complete a process prescribed by the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1104, *et seq.*" *Al-Obaidi v. Blinken*, No. 3:24-cv-00419, 2024

---

[1] Defendants are the U.S. Department of State, the U.S. Embassy in Ankara, Marco Rubio, (the U.S. Secretary of State), and Michael Goldman (the Charge d'Affaires of the U.S. Embassy in Ankara). Originally, Antony Blinken and Jeffrey L. Flake were named defendants, but they were automatically substituted by Marco Rubio and Michael Goldman, respectively, when the latter two took office. *See* Fed. R. Civ. P. 25(d).

WL 4536488, at *2 (M.D. Tenn. Oct. 2, 2024). At the first step, the U.S. citizen files a Form I-130 with the United States Citizenship and Immigration Services ("USCIS") on behalf on the alien beneficiary, seeking to have the alien classified as an "immediate relative." 8 U.S.C. §§ 1153(f), 1154(a). If USCIS approves the I-130 petition and classifies the alien beneficiary as an immediate relative, then "the beneficiary may apply for an immigrant visa." *Al-Obaidi*, 2024 WL 4536488, at *2 (citing 8 U.S.C. §§ 1201(a)(1), 1202(a)).

One of the requirements of the visa application process is that the alien seeking a visa must attend an in-person interview with a consular officer (with certain exceptions not applicable here). *See* 8 U.S.C. § 1202(h). The alien fills out a visa application in the presence of the officer at the interview. *Id.*(e). It is the alien's burden to establish that he is eligible to receive a visa and not inadmissible under any provision of the INA. 8 U.S.C. § 1361. A consular officer must refuse a visa if he determines that "such alien is ineligible to receive a visa… under section 1182 of this title, or any other provision of law," "the application fails to comply" with the INA or regulations issued thereunder, or "the consular officer knows or has reason to believe such alien is ineligible to receive a visa[.]" 8 U.S.C. § 1201(g). The ultimate decision whether to issue or refuse an applicant's visa rests with the consular officer. *Id.*(a).

Once the consular officer conducts the interview with the applicant, the law requires that the consular officer "issue the visa, [or] refuse the visa under INA 212(a) or 221(g)[.]"[2] 22 C.F.R. § 42.81(a); *see also* 8 U.S.C. § 1201(g). In the event that the consular officer refuses the visa, the officer may conduct "administrative processing" to determine if additional information from other sources may help establish an applicant's eligibility for a visa. The State Department explains the process as such:

> If a visa applicant has not established that he or she is eligible for a visa, the consular officer must refuse that application. However, in accordance with Department procedures, a consular officer may determine that additional information from sources other than the applicant may help establish an applicant's eligibility for a visa. In such cases, refused visa applications warrant further administrative processing. Upon completion of case-specific administrative processing, the consular officer might conclude that an applicant is now qualified for the visa for which he or she applied. Alternatively, the officer may conclude that the applicant remains ineligible for a visa.[3]

## III.   FACTUAL BACKGROUND

Plaintiff is a citizen of the United States, and Mr. and Mrs. Sankari, his parents, are citizens of Turkey. ECF No. 1, PageID.2. On February 28, 2022, Plaintiff filed

---

[2] INA § 212 is 8 U.S.C. § 1182 in the statutory code, and INA § 221 is 8 U.S.C. § 1201.

[3] https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html (last visited May 29, 2025).

I-130 Petitions for Alien Relative on behalf of his parents with USCIS. *Id.* at PageID.3–4.

About a year later, on March 3, 2023, USCIS approved Plaintiff's I-130 petitions for his parents. *Id.* USCIS sent Mr. and Mrs. Sankari's cases to the National Visa Center ("NVC") for processing. *Id.* Once NVC completed its processing, it sent the cases to the U.S. Embassy in Ankara, Turkey, to schedule and conduct Mr. and Mrs. Sankari's visa interviews. *Id.* A consular officer at the Embassy conducted the interviews of Mr. and Mrs. Sankari on October 31, 2023. *Id.* That same day, the consular officer refused their visa applications, placed their cases in administrative processing, and asked for additional information to be provided on Forms DS-5535. ECF No. 12, PageID.116.[4] Mr. and Mrs. Sankari completed their respective Forms DS-5535 and submitted them shortly thereafter. ECF No. 1, PageID.4. As of the time of writing, Mr. and Mrs. Sankari's applications remain refused, with no movement on the administrative processing. *Id.* at PageID.4–5.

On November 8, 2024, Plaintiff filed the instant action seeking mandamus relief. Specifically, Plaintiff alleges that Defendants have unreasonably delayed

---

[4] In his complaint, Plaintiff stated that "[u]pon information and belief, the consular office initially approved the applications, then requested additional information following the interviews." ECF No. 1, PageID.4. In contrast, Defendants state that the consular officer refused his parents' visa applications from the outset. ECF No. 9, PageID.69. In Plaintiff's response, he admits that his parents' applications were refused, albeit "temporar[ily]." *See* ECF No. 12, PageID.116.

agency action on his parents' visa applications under the Administrative Procedure Act ("APA") and the Mandamus Act. *Id.* at PageID.5–7. Plaintiff also claims that Defendants have violated his due process rights under the Fifth Amendment by failing to act on his parents' visa applications. *Id.* at PageID.7. Plaintiff asserts that Defendants' alleged failure has "irrevocably harmed" him by keeping him separated from his parents for years, particularly considering that his parents are elderly and "require daily caretaking." *Id.*

Defendants have filed a Motion to Dismiss. *See* ECF No. 9. Defendants give several reasons why Plaintiff's claims must be dismissed. First, Defendants state that the Court lacks subject matter jurisdiction because Defendants have already taken the only action required under federal law—refusing Mr. and Mrs. Sankari's visa applications upon completing their interviews at the Embassy—so Plaintiff's claims are moot. *Id.* at PageID.71–72. Second, Defendants contend that Plaintiff's claims are barred by the doctrine of consular non-reviewability, which prevents the Judicial Branch from reviewing a consular official's decision to issue or refuse a visa. *Id.* at PageID.76–77. Defendants reason that by seeking an order compelling another decision by the consular officer, Plaintiff "essentially demands that this Court set aside and reconsider the substantive decision the consular officer has already made[.]" *Id.* at PageID.78.

Finally, Defendants allege that Plaintiff has failed to state a claim upon which relief can be granted. Defendants state that the consular officer has already refused his parents' visa applications, so there is nothing to compel Defendants to do in this case. Furthermore, Defendants contend that Plaintiff has failed to demonstrate that there has been any unreasonable delay. *Id.* at PageID.79–85. In addition, Defendants state that Plaintiff failed to establish a claim for a due process violation because his parents do not possess a constitutional right to enter the United States, and Plaintiff holds no constitutionally protected right as it pertains to his parents' visa applications. *Id.* at PageID.85–86.

In response, Plaintiff cites case law which holds that where a visa application is refused pending administrative processing, that decision is a non-final decision and the Government has a continuing obligation to conclude administrative processing in a timely manner. ECF No. 12, PageID.108–09. Therefore, Plaintiff contends that his claims are not moot. *Id.* at PageID.112. Plaintiff also states that the doctrine of consular non-reviewability is inapposite because he is seeking judicial review of the consular official's *failure to act*, rather than the consular official's decision on his parents' cases. *Id.* at PageID.113–14.

As a result, Plaintiff asserts that he states a claim under the APA and Mandamus Act. *Id.* at PageID.117–18. He also asserts that Defendants' delay in this case is unreasonable, and that, regardless, this issue should not be determined at the

motion to dismiss stage. *Id.* at PageID.118–19. Finally, Plaintiff clarifies that the due process right that Defendants have violated is his right to have his parents' visa applications adjudicated in a timely manner. *Id.* at PageID.124.

## IV.   LAW & ANALYSIS

### a.  Legal Standards for Motions to Dismiss

A motion to dismiss for lack of subject matter jurisdiction is brought under Federal Rule of Civil Procedure 12(b)(1). *Forest City Residential Mgmt., Inc. ex rel. Plymouth Square Ltd. Dividend Housing Ass'n v. Beasley*, 71 F. Supp. 3d 715, 722–23 (E.D. Mich. 2014). Rule 12(b)(1) motions can be categorized as facial attacks or factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). "A *facial* attack is a challenge to the sufficiency of the pleading itself." *Id.* (emphasis in original). In such an instance, the court takes the material allegations of the petition as true and construes them in the light most favorable to the nonmoving party. *Id.* In contrast, "[a] *factual* attack… is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction." *Id.* (emphasis in original). There is no presumption of truthfulness to the plaintiff's factual allegations, and the court is free to weigh evidence to determine its power to adjudicate the case. *Id.* "The party invoking federal jurisdiction bears the burden of establishing" the elements of jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

8

A motion to dismiss for failure to state a claim is brought under Federal Rule of Civil Procedure 12(b)(6) and tests the sufficiency of the pleadings by asking whether the complaint states a claim upon which relief may be granted. *See Bassett v. Nat'l College Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Rule 8(a)(2) requires a plaintiff's complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While this standard does not require "detailed factual allegations," a plaintiff's pleadings must raise "more than labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, the factual allegations must "raise a right to relief above the speculative level," and must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a motion to dismiss under Rule 12(b)(6), a court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all reasonable inferences in favor of the plaintiff." *Bassett*, 528 F.3d at 430 (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)).

### b. APA/Mandamus

Under the Mandamus Act, a court has authority "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus relief is a drastic remedy that is "only to be

reserved for extraordinary situations." *Maftoum v. Chavez*, No. 07-CV-12819, 2007 WL 3203850, at *3 (E.D. Mich. Oct. 31, 2007) (citing *Cheney v. U.S. Dist. Ct. for the Dist. of Columbia*, 542 U.S. 367, 380 (2004)). A writ of mandamus "is only appropriate where petitioner has exhausted all administrative remedies and defendant official owes petitioner a clear and nondiscretionary duty." *Id.* (citing *Work v. United States ex rel. Rives*, 267 U.S. 175, 177–78 (1925)).

Similarly, under the APA, a federal agency is required "within a reasonable time… [to] proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). The APA allows a court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). However, this remedy does not apply where the agency action at issue "is committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *see also Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004) (hereinafter "*SUWA*") ("[T]he only agency action that can be compelled under the APA is action legally *required*." (emphasis in original)).

"So, under either [the Mandamus Act or the APA], Plaintiff must show that Defendants owed [him] a non-discretionary duty and failed to act upon this duty." *Igal v. U.S. Consulate Gen. in Johannesburg*, No. 2:23-cv-4160, 2024 WL 2882653, at *3 (S.D. Ohio June 7, 2024) (citations omitted). As a result, "[w]hen a petitioner seeks both mandamus relief and relief under the APA, courts apply the same principles and standards both to determine jurisdiction and to assess the merits."

*Nelson v. United States*, 107 Fed. App'x 469, 471 (6th Cir. 2004). The existence of jurisdiction to compel agency action "is inextricably bound with the merits" of the claim. *Maczko v. Joyce*, 814 F.2d 308, 310 (6th Cir. 1987).

### c. Defendants' Jurisdictional Argument

As it must, the Court addresses Defendants' jurisdictional argument first. *See In re: 2016 Primary Election*, 836 F.3d 584, 587 (6th Cir. 2016) ("All that matters is that courts must decide jurisdictional issues before merits issues."); *Brennan v. Rhodes*, 423 F.2d 706, 706–07 (6th Cir. 1970) ("There still must be a case or controversy before a federal court can assume jurisdiction and reach the merits of a case."). Defendants contend that Plaintiff's claims are moot because Defendants have taken all action they are legally required to take, so there is no actual controversy between Plaintiff and Defendants. Defendants' argument is a factual attack to jurisdiction and the Court is free to weigh evidence on the issue. *Ritchie*, 15 F.3d at 598. Although Defendants stake their defense in the mootness doctrine, "standing is a more appropriate inquiry here because the Embassy's refusal to issue [Mr. and Mrs. Sankari] a visa occurred prior to commencement of litigation." *Bimbo Bakeries USA, Inc. v. Rubio*, No. 24-5919, 2025 WL 860493, at *5 n.6 (E.D. Pa. Mar. 19, 2025).[5]

---

[5] "Standing seeks to ensure the plaintiff has a personal stake in the outcome of the controvesy at the outset of litigation[,]" whereas mootness "is akin to saying that, although an actual case or controversy once existed, changed circumstances have

Under Article III of the U.S. Constitution, federal courts are given jurisdiction only over "cases" and "controversies." U.S. Const. art. III § 2; *Lujan*, 504 U.S. at 559–60. The doctrine of standing developed "to ensure that federal courts do not exceed their authority as it has been traditionally understood" under Article III. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). There are three requirements that must be met, at minimum, in order for a plaintiff to have standing to be heard in federal court: (1) the plaintiff must have an injury in fact, (2) there must be a causal connection between the injury and the conduct complained of, and (3) it must be likely that the injury is redressable by a favorable court decision. *Lujan*, 504 U.S. at 560–61. These standing requirements are "an essential and unchanging part of the case-or-controversy requirement of Article III." *Id.* at 560.

---

intervened to destroy standing." *Sumpter v. Wayne Cnty.*, 868 F.3d 473, 490 (6th Cir. 2017) (internal quotation marks and citations omitted). In other words, "standing applies at the sound of the starting gun, and mootness picks up the baton from there." *Id.* Here, Defendants do not claim that the case-or-controversy requirement was extinguished during litigation; rather, Defendants claim that the case or controversy was extinguished when they refused Mr. and Mrs. Sankari's visas after their consular interview. Regardless of whether the Court analyzes the jurisdictional issue under the standing or mootness doctrines, the outcome is the same because the crux of each doctrine is whether a case or controversy exists.

###### i.   Plaintiff Lacks Standing for His Mandamus and APA Claim Because Defendants Refused Mr. and Mrs. Sankari's Applications and Discharged Their Nondiscretionary Duties.

The crux of the disagreement between Plaintiff and Defendants is whether Defendants have any continuing nondiscretionary duty to further adjudicate Mr. and Mrs. Sankari's visa applications.

Plaintiff contends that the consular officer's initial refusal did not satisfy his obligation under the law to either issue or refuse Mr. and Mrs. Sankari's visas because his "subsequent request for additional documents [the Forms DS-5585] suggests the consular official did not reach a final decision… but instead kept it 'under consideration pending receipt.'" ECF No. 12, PageID.109. In contrast, Defendants contend that under the plain language of the law, the consular official's only nondiscretionary duty was to issue or refuse the visas after the consular interview. There is nothing in the law requiring Defendants to conduct or conclude administrative processing or render a "final decision" as it relates to administrative processing. ECF No. 9, PageID.74–75.

The problem with Plaintiff's approach is that he does not point to any law or regulation *requiring* Defendants to complete administrative processing, and thereby re-adjudicate a visa application that has already been refused. "In fact, [Plaintiff] has not pointed to any law or regulation that concerns visas in 'administrative processing' at all." *Yared v. Nepal*, No. 1:24 CV 2114, 2025 WL 1067738, at *4

13

(N.D. Ohio Apr. 9, 2025). Under the INA, "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(b). The statute provides that after an interview, the consular officer must issue the visa or refuse the visa if the alien is ineligible. 8 U.S.C. § 1201(a), (g). The INA's implementing regulations similarly state that when an immigrant visa application has been completed and executed before a consular officer, he "must issue the visa, [or] refuse the visa under INA 212(a) or 221(g) or other applicable law[.]" 22 C.F.R. § 42.81(a). "Conspicuously absent" from these statutory provisions and regulations "is any requirement that a refusal be 'final' or ineligible for discretionary re-adjudication or 'administrative processing.'" *Yaghoubnezhad v. Stufft*, 734 F. Supp. 3d 87, 101 (D.D.C. 2024). Because the statute and regulations do not provide a "specific, unequivocal command" that Defendants issue a final, unreviewable decision on a visa, or to conduct or complete administrative processing once a visa has been refused, there is no action here that Defendants have unlawfully withheld or unreasonably delayed. *See SUWA*, 542 U.S. at 63; *Yaghoubnezhad*, 734 F. Supp. 3d at 101.

Defendants have submitted evidence—and Plaintiff admitted in his response—that the consular officer refused Plaintiff's parents' applications pursuant to 8 U.S.C. § 1201(g). *See* ECF No. 9-1 (Declaration of Samuel W. McDonald, Attorney Adviser in the Office of the Assistant Legal Adviser for Consular Affairs);

14

ECF No. 12, PageID.116. Indeed, the U.S. Department of State's Visa Status Check website confirms that Mr. and Mrs. Sankari's visas are "refused."[6] This refusal "reflects that [the] consular officer determined that [Mr. and Mrs. Sankari] failed to meet their burden to establish eligibility for the visa sought," which is what the INA and its regulations require. *Al-Obaidi*, 2024 WL 4536488, at *4. The possibility that Defendants will reconsider this refusal "is immaterial, when no statute, regulation, or other source imposes a duty to reconsider it." *Pegah Z. v. Blinken*, No. 4:24-cv-00529, 2025 WL 629343, at *4 (S.D. Tex. Feb. 4, 2025); *see also Omar v. Blinken*, 756 F. Supp. 3d 520, 533 (S.D. Ohio 2024) ("A plain reading of § 42.81(a)… indicates that the refusal that occurred here, a refusal under INA 221(g), is all that the regulations require."). To hold otherwise, the Court would be forced to "defin[e] what it means to conclude a visa application in a manner that neither a federal statute nor regulation clearly requires." *Karimova v. Abate*, No. 23-5178, 2024 WL

---

[6] The Court takes judicial notice of this information. Federal Rule of Evidence 201 permits a court to "judicially notice a fact that is not subject to reasonable dispute because it… can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). A court is permitted to take judicial notice of information found on government websites because it is generally considered not subject to reasonable dispute. *United States ex rel. Dingle v. BioPort Corp.*, 270 F. Supp. 2d 968, 972 (W.D. Mich. 2003). In his complaint, Plaintiff provided his parents' immigrant visa case numbers. *See* ECF No. 1, PageID.4. Plugging those numbers into the U.S. Department of State's Visa Status Check website pulls up a window which states that Mr. and Mrs. Sankari's visas are refused. *See* https://ceac.state.gov/ceacstattracker/status.aspx (last visited May 29, 2025).

3517852, at *4 (D.C. Cir. July 24, 2024); *Yaghoubnezhad*, 734 F. Supp. 3d at 102

("Plaintiffs ask the Court to impose a duty that has no basis in the INA or its

implementing regulations.").

An unpublished Sixth Circuit case supports this conclusion. In *Hussein v.

Beecroft*, the plaintiffs were a husband (U.S. citizen) and a wife (Yemeni citizen).

782 Fed. App'x 437, 439–40 (6th Cir. 2019). The husband filed a Form I-130

petition to get his wife "'immediate relative status' and bring her to the United

States," which was approved by the NVC and sent to the U.S. Embassy for a visa

interview. *Id.* at 440. At the visa interview, the consular officer doubted the

legitimacy of the husband and wife's marriage and refused the wife's visa, citing 8

U.S.C. § 1201(g). *Id.* Thereafter, the consular officer sent the I-130 petition back to

the NVC with a recommendation that the initial approval of the petition be revoked.

*Id.* Later, the plaintiffs submitted additional evidence of their marriage, but their

petition remained at the NVC for re-adjudication. *Id.*

While awaiting a decision on the re-adjudication of the I-130 petition at the

NVC, the plaintiffs filed a petition for a writ of mandamus compelling the

adjudication of their visa application, claiming that their application remains in

'administrative processing.' *Id.* The plaintiffs argued that because the consular

officer merely cited 8 U.S.C. § 1201(g) as the reason for the denial without

specifying a more *particular* reason, the refusal was not a final adjudication. *See*

*Hussein v. Beecroft*, No. 17-12356, 2018 WL 3574717, at *3 (E.D. Mich. July 25, 2018) (the case in the district court). The Sixth Circuit affirmed the district court's denial of the writ. *Hussein*, 782 Fed. App'x at 441. The Sixth Circuit held that "the government fully discharged its clear duty to adjudicate [the wife's] visa application" when the consular official denied it under 8 U.S.C. § 1201(g). *Id.* at 441–42.

*Hussein* and the present case diverge because the plaintiffs in *Hussein* argued that there was no final adjudication where the consular officer failed to cite a specific reason for refusing to issue the wife's visa, whereas Plaintiff here argues that there has been no final adjudication because Mr. and Mrs. Sankari's cases are in administrative processing. However, in both cases, the consular officer rendered a refusal under 8 U.S.C. § 1201(g). Just as the Sixth Circuit found in *Hussein*, Plaintiff here lost standing "the moment the consular officer denied [Mr. and Mrs. Sankari's] visa[s]" under 8 U.S.C. § 1201(g). *Id.* at 442.

As another source of a nondiscretionary duty to re-adjudicate his parents' visa applications, Plaintiff points to the U.S. Department of State's Foreign Affairs Manual ("FAM"), *see* ECF No. 12, PageID.110, which states that when an applicant has presented new evidence to overcome a prior refusal, the government "should re-open and re-adjudicate the case[.]" 9 FAM 306.2-2(A)(a)(1).[7] However, "the FAM

---

[7] *See* https://fam.state.gov (last visited May 21, 2025).

does not carry the force of law." *Aramnahad v. Rubio*, No. 24-cv-1817-MAU, 2025 WL 973483, at *7 (D.D.C. Mar. 31, 2025); *see also Ramizi v. Blinken*, 745 F. Supp. 3d 244, 263 (E.D.N.C. 2024). Review under the APA and Mandamus Act is limited only to "*required* agency action" and cannot be applied to action "that is not demanded by law[.]" *SUWA*, 542 U.S. at 65 (emphasis in original). So, the FAM does not import a duty on Defendants to conduct or conclude Plaintiff's parents' administrative processing.

Plaintiff also cites 22 C.F.R. § 42.81(b), which states that if the grounds for an applicant's refusal can be overcome with additional evidence and the applicant indicates he intends to submit such evidence, documents related to the application *may* be kept for a period of one year. *See* ECF No. 12, PageID.110. However, this section does not speak to a legal duty to re-adjudicate an applicant's visa application, but rather to retaining documents related to an application. Even if it did, the use of the term "may" indicates discretion, not a nondiscretionary duty. *See Dorris v. Absher*, 179 F.3d 420, 429 (6th Cir. 1999) ("The use of the term 'may' in a statute is generally construed as permissive rather than as mandatory.").[8]

----

[8] In addition to subsection (b), subsection (e) of 22 C.F.R. § 42.81 states that "[i]f a visa is refused, and the applicant within one year from the date of refusal adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered." Plaintiff did not cite this section in his complaint or in his brief as the source of Defendants' nondiscretionary duty. Furthermore, "22 C.F.R. § 42.81(e) is only a mandatory requirement for reconsideration when an applicant has adduced evidence 'tending to overcome the

Finding no help in the INA or its implementing regulations, Plaintiff cites § 555(b) of the APA as the source of Defendants' nondiscretionary duty to complete administrative processing on his parents' visa applications. *See* ECF No. 1, PageID.5; ECF No. 12, PageID.117–18. That section simply states that "within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). However, "this general directive will not cut it." *Yaghoubnezad*, 734 F. Supp. 3d at 102. Section 555(b) "does not identify a discrete agency action; by its plain terms, it applies to *every* agency action." *Ramizi*, 745 F. Supp. 3d at 262. As such, it is a "far cry from the 'discrete agency action' that courts require when issuing an order compelling agency action 'unlawfully withheld or unreasonably delayed.'" *Hi-Tech Pharmacal Co., Inc. v. FDA*, 587 F. Supp. 2d 1, 9 (D.D.C. 2008). "Section 555(b) does not in any way dictate" how Defendants "can handle [Mr. and Mrs. Sankari's] rejected paperwork" after a refusal has already been rendered. *Karimova*, 2024 WL 3517852, at *4.

---

ground of ineligibility on which the refusal was based.'" *Sarshartehran v. Rubio*, No. 7:24-cv-633, 2025 WL 1261787, at *8 (W.D. Va. May 1, 2025). Although Plaintiff alleges that his parents submitted additional information to the consular officer after their refusal, "there is no way to know whether the information [Mr. and Mrs. Sankari] submitted… overcame any reason for ineligibility that consular officers had previously considered." *Id.* It is Plaintiff's burden to demonstrate subject matter jurisdiction, and the lack of argument or evidence on this matter prevents the Court from considering § 42.81(e) as a possible ground for finding subject matter jurisdiction to compel agency action. *Lujan*, 504 U.S. at 561.

The Court is cognizant of the tremendous split in authority on the issue of whether the Government has a nondiscretionary duty to complete administrative processing after the denial of a visa application. Courts across the Circuits, and even within this Circuit, have ruled inconsistently. *Compare Saad v. Risch*, No. 18-12074, 2019 WL 3842898, at *2 (E.D. Mich. Aug. 15, 2019) (finding that consular officer had no duty to conduct or complete administrative processing after refusing visas); *Yared*, 2025 WL 1067738, at *5 (same); *Al-Obaidi*, 2024 WL 4536488, at *4–*5 (same); *with Yafai*, 2024 WL 2806948, at *3 (finding that consular officer had a continuing duty to complete administrative processing); *Omar*, 756 F. Supp. 3d at 534 (same); *Igal*, 2024 WL 2882653, at *6 (same). In other words, Plaintiff's complaint does not fail for lack of supporting case law.

Ultimately, however, Defendants' position is better reasoned. Courts which hold that there is a continuing legal duty on the Government to complete administrative processing tend to do so because they deem the consular officer's initial refusal "nonfinal." *See, e.g.*, *Yafai*, 2024 WL 2806948, at *3; *Awal v. U.S. Dep't of State*, No. 24-cv-382 (KMM/ECW), 2024 WL 4979661, at *9 (D. Minn. Dec. 4, 2024); *Gonzalez v. Offutt*, No. 1:23-cv-547, 2024 WL 2847962, at *4 (S.D. Ohio June 5, 2024); *Hajizadeh v. Blinken*, No. 23-1766 (LLA), 2024 WL 3638336, at *3 (D.D.C. Aug. 2, 2024). Other courts consider the language that the Government used in refusing an application—such as telling the applicant that he "will" receive

20

another adjudication once administrative processing is complete—which leads those courts to find that the initial refusal was not a true refusal, but a deferral of a decision. *See, e.g.*, *Ebrahimi v. Blinken*, 732 F. Supp. 3d 894, 904 (N.D. Ill. 2024); *Billoo v. Baran*, No. 2:21-cv-05401-CBM-(JPRx), 2022 WL 1841611, at *4 (C.D. Cal. Mar. 18, 2022). In addition, some courts discuss the practical issues that would result if the Government were allowed to leave cases in administrative processing without the ability of courts to compel their completion. *See, e.g.*, *Omar*, 756 F. Supp. 3d at 534; *Awal*, 2024 WL 4979661, at *9.

These are not proper considerations in determining whether to grant mandamus relief in this case. The INA and its regulations do not speak to the need for a consular officer "to reach a more definitive decision on an application that has already been refused." *Sarshartehran*, 2025 WL 1261787, at *7. Thus, the fact that the consular official may reconsider an application does not impact the Court's analysis in this matter. *See Sackett v. EPA*, 566 U.S. 120, 127 ("The mere possibility that an agency might reconsider… does not suffice to make an otherwise final agency action nonfinal."). Similarly, even if the Government tells the visa applicant that his application will be re-adjudicated, it "is irrelevant to the relief [the applicant] seeks," because the Court's authority to compel agency action "is confined to compelling only discrete, *legally required* agency actions." *Yared*, 2025 WL 1067738, at *4 (emphasis added). Without pointing to binding law *requiring* re-

21

adjudication, the Government's statement to the applicant that it "will" re-adjudicate an application makes no difference. *Id.* Moreover, it is not for the Court to fix problems in the statutory and regulatory scheme that impact visa applicants whose cases are placed into administrative processing. Such issues are for the legislature or rulemaking body to resolve. *See Cobble v. Bernanke*, No. 3:08CV-516-S, 2008 WL 5054595, at *1 (W.D. Ky. Nov. 24, 2008) (quoting *In re Snavely*, 314 B.R. 808, 818 (9th Cir. 2004)) ("We cannot legislate from the bench to make the statute into something it is not[.]").

At bottom, a court should compel agency action only in extraordinary situations. *Maftoum*, 2007 WL 3203850, at *3. When considering whether this relief should be granted, a court must conclude that the agency has a clear, nondiscretionary duty to act. *Nelson*, 107 Fed. App'x at 471. In this case, for the reasons described above, the necessary clarity is lacking. "[The] background principle of judicial abstinence" in immigration cases "underscores the absence of any clear command in law or precedent for the action [Plaintiff] seeks to compel." *Karimova*, 2024 WL 3517852, at *6.

Therefore, Plaintiff lacks standing to seek relief under the APA or Mandamus Act.[9]

---

[9] Because the Court lacks jurisdiction to consider Plaintiff's APA and mandamus claim, it does not reach the parties' arguments on the doctrine of consular non-reviewability or on the merits. The Court notes, however, that Plaintiff has a weak

### d. **Plaintiff's Due Process Claim**

Only Plaintiff's due process claim remains. In his complaint, Plaintiff asserts that he has a "right to fundamental fairness in administrative adjudication" under the Due Process Clause of the Fifth Amendment, and that Defendants have violated this right by delaying and failing to act on his parents' visa applications. ECF No. 1, PageID.6. Plaintiff does not specify whether he asserts a procedural or substantive due process claim. The Government moves to dismiss this claim under Federal Rule of Civil Procedure 12(b)(6). ECF No. 9, PageID.86.

In order to succeed on a procedural due process claim, a plaintiff must demonstrate that he has a "liberty or property interest" which is "protected by the Constitution or created by statute." *Bangura v. Hansen*, 434 F.3d 487, 496 (6th Cir.

---

case for unreasonable delay. Without going into a detailed analysis of the factors that courts consider when analyzing agency delays (the "*TRAC* factors"), the Court observes that "immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Stone v. Blinken*, No. 2:23-cv-12181, 2024 WL 3556183, at *4 (E.D. Mich. July 26, 2024) (quoting *Didban v. Pompeo*, 435 F. Supp. 3d 168, 176 (D.D.C. 2020)); *Yafai*, 2024 WL 2806948, at *5 (finding three-year delay not unreasonable); *Hosseini v. Napolitano*, 12 F. Supp. 3d 1027, 1035 (E.D. Ky. 2014) (noting that "courts have found delays of four years or less to be reasonable[.]"). Notably, the reasonableness of an agency's timeframe to make decisions is the "most important" consideration out of all the *TRAC* factors. *Ahmed v. Blinken*, No. 23-11860, 2024 WL 4172525, at *4 (E.D. Mich. Sept. 12, 2024). Here, Plaintiff's parents' I-130 were approved in March 2023, and placed in administrative processing in October 2023. Regardless of which of these dates is considered, the visa applications have been pending for well within the timeframe that courts have found reasonable as a matter of law when ruling on motions to dismiss.

2006); *Almario v. Att'y Gen.*, 872 F.2d 147, 151 (6th Cir. 1989). Similarly, to succeed on a substantive due process claim, a plaintiff generally must show that "a statute or government action burdens a fundamental right and cannot withstand strict scrutiny." *Bangura*, 434 F.3d at 494. "If a fundamental right is not implicated, courts will utilize rational-basis review." *ARJN #3 v. Cooper*, 517 F. Supp. 3d 732, 744 (M.D. Tenn. 2021) (citation omitted).

### i.    Plaintiff Failed to Allege a Claim for a Procedural Due Process or Substantive Due Process Violation

As an initial matter, the Court has already determined that Defendants have not failed to act on Mr. and Mrs. Sankari's visa applications. Rather, Defendants adjudicated their applications as required under the law. Thus, the factual basis of Plaintiff's due process claim fails.

Moreover, Plaintiff failed to identify a liberty or property interest underlying his procedural due process claim. Plaintiff's complaint does not allege that the INA, any of its regulations, the Constitution, or otherwise, creates a protected liberty or property interest in the adjudication of his parents' visa applications. Notably, courts have held that individuals have "no property right in an immigrant visa." *Smirnov v. Clinton*, 806 F. Supp. 2d 1, 12 (D.D.C. 2011) (citing *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950)). Nor do individuals have "a constitutionally-protected interest in the procedures by which such visas are obtained." *Id.* (citing *Legal Assistance for Vietnamese Asylum Seekers v. Dep't of*

*State*, 104 F.3d 1349, 1353 (D.C. Cir. 1997)). The lack of a liberty or property interest in visa adjudications is all the more amplified in the present case, where Plaintiff claims a procedural due process right in the way his *parents*' visas are adjudicated. "[T]he Constitution does not ordinarily prevent the government from taking actions that 'indirectly or incidentally' burden a citizen's legal rights." *Dep't of State v. Munoz*, 602 U.S. 899, 917 (2024) (citation omitted). Indeed, Plaintiff's "claim to a procedural due process right in *someone else's* legal proceeding would have unsettling collateral consequences." *Id.* at 916 (emphasis in original). Thus, even though Plaintiff may be suffering incidental harm because his parents' visas are undergoing administrative processing, "that harm does not give [him] a constitutional right to participate in [his parents'] consular process." *Id.* at 917.

Plaintiff also failed to identify a fundamental right for the purpose of substantive due process. Plaintiff cited no case law and made no argument which demonstrates that a citizen has any right, let alone a fundamental right, in having his family member's visas adjudicated within a certain timeframe. And it is well established that U.S. citizens "do not have a constitutional right to require the National Government to admit noncitizen family members into the country." *Baaghil v. Miller*, 1 F.4th 427, 433 (6th Cir. 2021) (citing *Kerry v. Din*, 576 U.S. 86, 96–97 (2015)).

25

In sum, "Plaintiff's due-process theories prove unsupported" and "the Court will not manufacture Plaintiff's arguments for [him]." *Davila v. Cohan*, No. 23-CV-1532 JLS (BLM), 2024 WL 711618, at *10 (S.D. Cal. Feb. 21, 2024). Accordingly, Plaintiff's due process claim must be dismissed.

## V.    CONCLUSION

For the foregoing reasons, the Government's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) [ECF No. 9] is **GRANTED**, and this case is hereby **DISMISSED WITHOUT PREJUDICE.**

**SO ORDERED.**


Dated:  May 30, 2025                     /s/Gershwin A. Drain
                                         GERSHWIN A. DRAIN
                                         United States District Judge